IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

REBECCA ANN FINLEY,

       Plaintiff,

v.                                              Case No.: 3:14-cv-10126

CAROLYN W. COLVIN,
**Acting Commissioner of the Social
Security Administration,**

       Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of the Social Security Administration (hereinafter the "Commissioner") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently before the Court on the parties' motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 11, 12). Both parties have consented in writing to a decision by the United States Magistrate Judge. (ECF Nos. 4, 5). The Court has fully considered the evidence and the arguments of counsel. For the reasons that follow, the Court finds that the decision of the Commissioner is supported by substantial evidence and should be affirmed.

### I. Procedural History

Plaintiff, Rebecca Ann Finley (hereinafter referred to as "Claimant"), filed for SSI benefits on December 14, 2010, alleging a disability onset of July 1, 2007 due to

1

"anxiety, depression, irritable bowel syndrome, arthritis; enlarged pancreas; hiatal hernia; fatty liver." (Tr. at 10, 158). The Social Security Administration ("SSA") denied the application initially and upon reconsideration. (Tr. at 10). On April 27, 2011, Claimant filed a written request for an administrative hearing, which was held on September 14, 2012 before the Honorable Charlie Paul Andrus, Administrative Law Judge ("ALJ"). (Tr. at 29-57). At the hearing, the ALJ noted that Claimant had previously filed an application for SSI, which was denied on October 5, 2010 after an administrative hearing. (Tr. at 10). Because the Claimant now alleged an onset date that fell within a previously adjudicated time period, the ALJ considered the pending application as including an implied request to reopen the prior application. (*Id.*). Upon determining that Claimant had not submitted any new evidence material to the prior decision, however, the ALJ found no good cause for reopening the earlier matter. Consequently, the prior decision was considered final for the time period through October 5, 2010. Claimant's amended onset date for purposes of the pending application, therefore, became October 6, 2010, one day after the last decision. (*Id.*). Looking at the time frame beginning on October 6, 2010 and ending on October 3, 2012, the date of the written decision, the ALJ determined that Claimant was not disabled and not entitled to benefits. (Tr. at 10-24).

      The ALJ's decision became the final decision of the Commissioner on December 12, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1–5). On February 13, 2014, Claimant timely brought the present civil action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed an Answer and Transcript of the Proceedings on April 25, 2014. (ECF Nos. 9, 10). Thereafter, the parties filed their briefs in support of judgment on the

pleadings. (ECF Nos. 11, 12). Accordingly, this matter is ready for resolution.

## II. Claimant's Background

Claimant was 30 years old on the amended disability onset date and 32 years old at the time of the administrative hearing. (Tr. at 33). She completed the seventh grade, (Tr. at 158), and could read and write in English. (Tr. at 157). Claimant had no past relevant work. (Tr. at 23).

## III. Summary of ALJ's Findings

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving disability, defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 416.920. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 416.920(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 416.920(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her

3

impairments. *Id.* § 416.920(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to establish, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. *Id.* § 416.920(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review." 20 C.F.R. § 416.920a. First, the SSA evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. If such impairment exists, the SSA documents its findings. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in

4

a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the SSA compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. 20 C.F.R. § 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual function. 20 C.F.R. § 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(2).

In this case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since December 14, 2010, the date of the application. (Tr. at 12, Finding No. 1). Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of anxiety; depression; hiatal hernia; an enlarged pancreas; degenerative joint disease; and a fatty liver. (Tr. at 12-16, Finding No. 2). The ALJ further found that Claimant's allegations of borderline intellectual functioning, migraine headaches, and carpal tunnel syndrome were non-severe, because they did not cause more than minimal limitation in Claimant's ability to do work-related activities. (*Id.*). The ALJ also found that Claimant's allegations of acid reflux and

5

irritable bowel syndrome were actually symptoms of her fatty liver, enlarged pancreas, and hiatal hernia; accordingly, they were not independent impairments to be considered under the Listing. (*Id.*).

At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any impairment contained in the Listing. (Tr. at 16-18, Finding No. 3). Consequently, the ALJ determined that Claimant had the RFC to:

> [P]erform sedentary work. The claimant can understand and carry out simple instructions for unskilled work. The claimant can make simple decisions and can maintain occasional contact with co-workers and not the public. The claimant can have no jobs requiring reading instructions, writing reports or math calculations. The claimant can have no work with a fixed production rate or pace. The claimant can stand or walk for three hours in an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant cannot work at heights or around dangerous machinery.

(Tr. at 18-22, Finding No. 4). Based upon the RFC assessment, the ALJ determined at the fourth step that Claimant was unable to perform any past relevant work. (Tr. at 22, Finding No. 5). Under the fifth and final inquiry, the ALJ reviewed Claimant's past work experience, age, and education in combination with her RFC to determine if she would be able to engage in substantial gainful activity. (Tr. at 23-24, Finding Nos. 6-9). The ALJ considered that (1) Claimant was born in 1980 and was defined as a younger individual; (2) she had a limited education, but could communicate in English; and (3) transferability of job skills was not material to the disability determination, because Claimant had no past relevant work. (Tr. at 23, Finding Nos. 6-8). Given these factors, Claimant's RFC, and the testimony of a vocational expert, the ALJ determined that Claimant could perform jobs that exist in significant numbers in the national economy. (Tr. at 23-24, Finding No. 9). In particular, Claimant could work as an inspector, security monitor, marker, and hand packer. Therefore, the ALJ concluded that Claimant

was not disabled as defined in the Social Security Act. (Tr. at 24, Finding No. 10).

## IV. Claimant's Challenges to the Commissioner's Decision

Claimant raises one challenge to the Commissioner's decision. She claims that the ALJ failed to consider Social Security Ruling ("SSR") 96-9p when crafting Claimant's RFC finding. According to Claimant, SSR 96-9p requires the ALJ to thoroughly consider the impact that mental impairments have on a claimant's ability to work when the claimant is physically limited to sedentary occupations. (ECF No. 11 at 4-5). In Claimant's case, the ALJ's conclusion that Claimant's borderline intellectual functioning was non-severe did not "comport with the realities of competitive employment and the evidence contained in the record." (*Id.* at 5). Claimant also argues that although the ALJ recognized her moderate limitations in concentration, persistence, and pace, "he failed to articulate in any meaningful manner what impact this limitation would have on the sedentary occupational base." (*Id.* at 4).

In response, the Commissioner contends that the ALJ fully complied with SSR 96-9p, which simply states that when a claimant has limitations that erode the unskilled sedentary occupational base, the ALJ may require the assistance of a vocational expert to determine whether any jobs exist in significant numbers that the claimant is capable of performing. (ECF No. 12 at 7-8). Here, the ALJ correctly consulted with a vocational expert, who identified specific jobs suited to Claimant's limitations. In regard to Claimant's assertion that the ALJ did not fully account for her borderline intellectual functioning and limitations in concentration, persistence, and pace, the Commissioner points out that the ALJ included very specific restrictions in the RFC finding directed toward those deficits. (*Id.* at 8-9). The Commissioner disagrees that the ALJ erred by not finding Claimant's borderline intellectual functioning to be a severe impairment, but

7

argues that even if Claimant's intellectual functioning is a severe impairment, the failure to identify it as such is harmless error given that the disability analysis progressed through all five steps, and the ALJ included limitations in the RFC finding that addressed Claimant's borderline intelligence. (*Id.* at 9-14).

## V. Scope of Review

The issue before this Court is whether the final decision of the Commissioner denying Claimant's application for benefits is supported by substantial evidence. In *Blalock v. Richardson*, the Fourth Circuit Court of Appeals defined substantial evidence as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Id.* Instead, the Court's duty is limited in scope; it must adhere to its "traditional function" and "scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Thus, the ultimate question for the Court is not whether the Claimant is disabled, but whether the decision of the Commissioner that the Claimant is not disabled is well-grounded in the evidence, bearing in mind that "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner]." *Walker v.*

8

*Bowen,* 834 F.2d 635, 640 (7th Cir. 1987).

## VI. <u>Relevant Medical Records</u>

The Court has reviewed the Transcript of Proceedings in its entirety, including the medical records in evidence, and summarizes below Claimant's medical treatment and evaluations to the extent that they are relevant to the issues in dispute.

### A. *Intellectual Functioning-Treatment Records*

Claimant obtained her mental health treatment through Prestera Centers for Mental Health ("Prestera"). The administrative file includes records beginning in early April 2010 and extending through February 2011. (Tr. at 293-318, 359-71). The first record mentioning intellectual functioning is dated April 16, 2010 and reflects a therapy session between Claimant and her counselor, Hewlett Trogdon, L.S.W. (Tr. at 315). The session note does not include a formal assessment or diagnosis, but does describe Claimant as "an intelligent woman who has insight and the ability to learn coping skills." (*Id.*).

On May 20, 2010, Dr. Khan Matin, a psychiatrist at Prestera, completed an Initial Psychiatric Evaluation form. (Tr. at 312-13). He noted that Claimant had an "8th grade" education and "average" intelligence. (Tr. at 312). In the diagnosis section of the form, Dr. Matin listed Panic Disorder with Agoraphobia under Axis I;[1] IBS (irritable bowel syndrome) and fatty liver diagnosis under Axis III; "mild to moderate" under Axis IV; and gave Claimant a Global Assessment of Functioning Score of 40 under Axis V.

---

[1] The Axes refer to the multiaxial assessment system used by many mental health care providers. *See Diagnostic and Statistical Manual of Mental Disorders,* Americ. Psych. Assoc, 32 (4th Ed. 2002) ("DSM-IV") at 25-31. This system requires "an assessment on several axes, each of which refers to a different domain of information that may help the clinician plan treatment and predict outcome." *Id.* There are five axes in the DSM-IV: Axis I involves clinical disorders; Axis II involves personality disorders and mental retardation (intellectual disabilities); Axis III involves general medical conditions; Axis IV involves psychosocial and environmental problems; and Axis V is the Global Assessment of Functioning score. (*Id.*).

9

However, under Axis II, which is designated for personality disorders and intellectual disabilities, no diagnosis was included. (*Id.*).

On June 30, 2010, Mr. Trogdon again described as one of Claimant's strengths that she was "an intelligent woman who has the ability to learn coping skills." (Tr. at 306). On a record dated July 22, 2010, under the section entitled "Client's Diagnosis as of 7/1/2010," Claimant had an Axis I diagnosis of Generalized Anxiety Disorder; "Deferred Diagnosis" at Axis II; "No Medical Problems Noted" at Axis III; moderate problems with primary support group at Axis IV, and a GAF score of 57 at Axis V. (Tr. at 303).

On February 15, 2011, Debra Stephens, a licensed social worker at Prestera, completed an eight-page data base pertaining to Claimant. (Tr. at 361-68). The data base once more reflected a deferred diagnosis at Axis II. (Tr. at 361). Under a section entitled "Level of Functioning," Claimant was assessed in all categories, including activities of daily living, maintaining relationships, personal safety, school/work, and social situations, as having either limited impairment or no impairment. (Tr. at 363).

### B. Consultative Assessments and Other Opinions

On February 12, 2011, agency consultant, Debra Lilly, Ph.D., completed a Psychiatric Review Technique. (Tr. at 326-39). She determined that Claimant had medically determinable impairments that fell within the categories of organic mental disorders, affective disorders, and anxiety-related disorders. (Tr. at 326). Under organic mental disorders, Dr. Lilly felt that Claimant had Borderline Intellectual Functioning, although she provided no basis for that diagnosis. (Tr. at 327). Under affective disorders, she diagnosed Claimant with Major Depressive Disorder versus Adjustment Disorder, (Tr. at 329), and under anxiety-related disorders, Claimant had Generalized

10

Anxiety Disorder versus Panic Disorder. (Tr. at 331). Rating the degree of limitation, Dr. Lilly assessed Claimant as having mild impairments in her activities of daily living; moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 336). Dr. Lilly found insufficient evidence to establish the presence of paragraph C criterion. (Tr. at 337). In her notes, Dr. Lilly mentioned that Claimant had IQ test scores of 70 verbal, 67 performance, and 66 full scale, which Dr. Lilly felt were inconsistent with the therapist's descriptions of Claimant as an "intelligent woman who has insight and the ability to learn coping skills." (Tr. at 338). Furthermore, Dr. Lilly observed that Claimant's intelligence was assessed as "average" by her treating psychiatrist. (*Id.*).

Dr. Lilly also completed as Mental Residual Functional Capacity Assessment form. (Tr. at 322-25). In the category of Understanding and Memory, she opined that Claimant was not significantly limited in the ability to remember locations and work-like procedures, or understand and remember simple instructions, but she was moderately limited in understanding and remembering detailed instructions. (Tr. at 322). Regarding Claimant's Sustained Concentration and Persistence, Dr. Lilly felt Claimant was not significantly limited when dealing with simple matters and ordinary routines, but was moderately impaired in carrying out detailed instructions; maintaining attention and concentration for extended periods; being able to abide by a schedule; being able to complete a normal workday or work week without interruptions from psychologically based-symptoms; and perform at a consistent pace. (Tr. at 322-23). Dr. Lilly did not find Claimant to be significantly limited in any function related to adaption, but opined that Claimant was moderately limited in her ability to interact appropriately with the general public and get along with co-workers. (Tr. at 323). In

11

summary, Dr. Lilly assessed Claimant's residual functional capacity as being able to maintain occasional interaction with others, but not being able to read instructions, write reports, do math calculations, or perform at a fixed production rate or pace. (Tr. at 324).

Frank Roman, Ed.D., completed a Psychiatric Review Technique on April 19, 2011. (Tr. at 380-93). He determined that Claimant had evidence of an organic mental disorder (borderline intellectual functioning); affective disorder (depressive syndrome); and an anxiety-related disorder (anxiety). (Tr. at 380-81, 383, 385). Dr. Roman opined that Claimant had mild limitations in her activities of daily living; moderate limitations in the ability to maintain social functioning and in maintaining concentration, persistence, and pace; no evidence of episodes of decompensation of extended duration; and no evidence of paragraph C criterion. (Tr. at 390-91). He reviewed the ALJ's decision from October 5, 2010, and found it to contain an accurate assessment of Claimant's RFC. (Tr. at 392, 396). Nonetheless, Dr. Roman completed his own Mental Residual Functional Capacity Assessment form. (Tr. at 394-96). His conclusions were quite similar to those of Dr. Lilly, although Dr. Roman opined that Claimant has less limitations when it came to maintaining a regular schedule and being punctual, but was a little more limited in her ability to work with others without being distracted. (Tr. at 322, 394). He also believed Claimant would have a harder time accepting instruction and criticism from supervisors than did Dr. Lilly. (Tr. at 323, 395).

## VII. **Discussion**

Claimant's contention that the ALJ failed to comply with SSR 96-9p is entirely without merit. SSR 96-9p states, in relevant part, that an RFC for less than a full range of sedentary work "is especially critical for individuals who have not yet attained age

12

50." 1996 WL 374185, at *2 (S.S.A. Jul. 2, 1996). "Since age, education, and work experience are not usually significant factors in limiting the ability of individuals under age 50 to make an adjustment to other work, the conclusion whether such individuals who are limited to less than the full range of sedentary work are disabled will depend primarily on the nature and extent of their functional limitations or restrictions." *Id.* According to the Ruling, there are four mental activities generally required by competitive, unskilled sedentary work, including: (1) the ability to understand, remember, and carry out simple instructions; (2) the ability to make judgments commensurate with the functions of unskilled work (i.e. simple work-related decisions); (3) the ability to respond appropriately to supervision, co-workers, and usual work situations; and (4) the ability to deal with changes in a routine work setting. *Id.* at *9. While a substantial loss of any of these abilities will significantly erode the unskilled, sedentary occupational base, a less than substantial loss may or may not erode the base. For that reason, the ALJ should carefully assess the claimant's remaining capacities and seek the assistance of a vocational expert when one or more of the four requisite mental activities is limited. *Id.*

That is precisely what the ALJ did in this case. First, he determined that Claimant was under the age of 50 and was restricted to sedentary work. Then, the ALJ obtained two independent RFC assessments pertaining to Claimant's mental impairments, both of which included a function-by-function assessment. (Tr. at 322-25, 394-97). Both evaluating experts opined that Claimant was not significantly limited in her ability to understand, remember, and carry out simple instructions; make simple work-related decisions; or respond appropriately to changes in the work setting. (Tr. at 322-23, 394-95). Consequently, Claimant had no significant loss of ability in three of the four

requisite mental activities. In the last activity, the experts felt that Claimant would have moderate limitations in dealing with co-workers without distracting them or acting inappropriately, but they disagreed about Claimant's ability to handle supervision. Nonetheless, neither expert found Claimant to have marked limitations in any functional category. In addition to the experts, the ALJ gave great weight to the October 5, 2010 administrative decision denying Claimant's prior application for benefits. The ALJ pointed out that Claimant's condition had not changed in the interim, and the prior decision included specific restrictions designed to address Claimant's mental impairments. (Tr. at 22). He noted that Claimant was limited to making only simple work-related decisions with few workplace changes. She could have only occasional interactions with co-workers and the general public. The prior decision restricted Claimant from occupations that required her to read instructions, write reports, complete mathematical calculations, or perform work at a fixed production rate or pace. The ALJ then conducted a thorough review of the remaining evidence. He examined Claimant's daily activities, discussed her testimony, analyzed the treatment records from Prestera, and evaluated the credibility of Claimant's statements. From this review of the objective findings, subjective statements, medical source statements, and prior administrative findings, the ALJ pieced together a picture of the most Claimant was capable of doing despite her limitations. Accordingly, as required by SSR 96-9p, the ALJ carefully assessed Claimant's remaining capacities based upon the evidence in the record and crafted an RFC finding that specifically accounted for all of the limitations supported by the evidence, including the functional effects of her mental impairments.

  Finally, the ALJ complied with the SSR's suggestion that a vocational resource be consulted to measure how much Claimant's limitations eroded the occupational base

and to determine what occupations remained, if any, that could be performed by Claimant. To that end, the ALJ posed hypothetical questions to a vocational expert that included the limitations contained in Claimant's RFC finding. When considering the additional restrictions, the vocational expert opined that the unskilled sedentary occupational base would be eroded significantly. (Tr. at 53). Notwithstanding the erosion, the vocational expert testified that Claimant would still be able to do approximately thirty percent of the jobs found at that combined exertional/skill level. In the regional and national economy, the vocational expert identified four jobs that existed in significant numbers that Claimant was capable of performing. Thus, the ALJ adhered both to the intent and the letter of SSR 96-9p.

Claimant's additional complaint that the ALJ erred by failing to find Claimant's Borderline Intellectual Functioning to be a severe impairment is similarly unpersuasive. While it is true that Borderline Intellectual Functioning was included as a severe impairment in the prior administrative decision, the ALJ emphasized that nothing in the record supported a conclusion that Claimant's intellectual functioning caused more than a minimal limitation in her ability to perform basic work activities. (Tr. at 13). Indeed, none of Claimant's treating mental health care providers diagnosed her with an intellectual disability. Her counselor described her as "intelligent" on more than one occasion, and Claimant's psychiatrist gauged her intellect as "average" based on their interactions. The ALJ noted that Claimant could take care of her own needs, care for her children independently, pick them up from school, manage the household without help, pay bills, count change, use a checkbook, drive a car, do her own shopping, and attend physician appointments. (Tr. at 13-15). Her activities and level of independence were not consistent with someone more than minimally impaired by an intellectual disability.

15

In any event, as the Commissioner argues, the sequential process proceeded to step three. From that perspective, even if the ALJ erred by not considering Claimant's Borderline Intellectual Impairment to be severe, Claimant suffered no harm because the outcome at step two was the same: Claimant's application for benefits moved on to the next step in the sequence. Courts in this circuit have held that failing to list a severe impairment at the second step of the process generally is not reversible error as long as the process continues and any functional effects of the impairment are appropriately considered during the later steps. *See McKay v. Colvin,* No. 3:12–cv-1601, 2013 WL 3282928, at *9 (S.D.W.Va. Jun. 27, 2013); *Cowan v. Astrue,* No. 1:11-cv-7, 2012, WL 1032683, at *3 (W.D.N.C. Mar. 27, 2012) (collecting cases); *Conard v. Comm'r*, Case No. SAG-12-2290, 2013 WL 1664370, at *2 (D. Md. Apr. 16, 2013) (finding harmless error where Claimant made threshold of severe impairment regarding other disorders and "the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted [his] ability to work"); *Lewis v. Astrue*, 937 F. Supp. 2d 809, 819 (S.D.W.Va. 2013) (applying harmless error standard where ALJ proceeded to step three and considered non-severe impairments in formulating claimant's RFC); *Cook ex rel A.C. v. Colvin*, Case No. 2:11-cv-362, 2013 WL 1288156, at *4 (E.D. Va. Mar. 1, 2013) ("The failure of an ALJ to find an impairment to be severe at Step 2, however, is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process."); *Mauzy v. Astrue,* No. 2:08–cv–75, 2010 WL 1369107, at *6 (N.D.W.Va. Mar. 30, 2010) ("This Court finds that it was not reversible error for the ALJ not to designate any of the plaintiff's other mental conditions as severe or not severe in light of the fact that he did,

16

during later steps of the sequential evaluation process, consider the combined effect of all of the plaintiff's impairments."); A number of federal courts of appeals have agreed with this approach. *Jerome v. Colvin*, 542 F. App'x 566, 566 (9th Cir. 2013); *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013); *Henke v. Astrue*, 498 F. App'x 636, 640 (7th Cir. 2012); *Schettino v. Comm'r of Soc. Sec.*, 295 F. App'x 543, 545 n.4 (3d Cir. 2008); *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008); *Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Clearly, when the ALJ adopted limitations in the RFC finding from the prior decision—such as only unskilled work, and no jobs requiring Claimant to read instructions, write reports, or do mathematical calculations—the ALJ was accounting for the intellectual impairment included as a severe impairment in the prior decision. Thus, Claimant can show no harm from the ALJ's decision to exclude Borderline Intellectual Functioning as a severe impairment in step two of the sequential evaluation process; consequently, neither remand nor reversal is warranted. *Camp v. Massanari,* 22 Fed. App'x 311, 311 (4th Cir.2001) (per curiam) (holding that when a plaintiff fails to show a resulting prejudice, an ALJ's error is harmless).

Therefore, having thoroughly considered the record and the arguments of counsel, the Court **FINDS** that the ALJ properly considered Claimant's mental impairments, fully accounted for the functional effects of the impairments, and issued a decision that is supported by substantial evidence.

## VIII. Conclusion

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision **IS** supported by substantial evidence. Therefore, by Judgment Order entered this day, the final decision of the Commissioner is **AFFIRMED** and this

17

matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to transmit copies of this Order to all counsel of record.

                                      **ENTERED:** March 3, 2015

                                      Cheryl A. Eifert
                                      United States Magistrate Judge